IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.  Case No.: 4:06cr33-SPM

SAMUEL D. HANNA

_____/

## STATEMENT OF FACTS

Comes now the United States of America, and provides this factual basis for the acceptance of a guilty plea from Samuel D. Hanna. Should this case go to trial, the Government is prepared to present evidence as follows:

1. The defendant, Samuel D. Hanna, had a series of loans at the C & L Bank of Bristol, Bristol, Florida, and its successor bank, The Bank (hereinafter "the Bank"). The defendant operated a trucking business and faced severely deteriorating financial conditions in the late 1990's. The defendant met with a bankruptcy attorney who advised him to shut down his business and declare bankruptcy in approximately 1999. Prior to filing for bankruptcy, however, the defendant, met with long time lender and business advisor Jed Hiers, the president of The Bank, who told the defendant not to file for bankruptcy and that they would work the defendant's problems out at The Bank. Hiers advised the defendant that the defendant would have to borrow money under new and different names, so that the amount of borrowing for each name would be different from the defendant's current loans.

SCANNED/POSTED/RETURNED IN FLND

Date _____ By _____

OFFICE OF CLERK
U.S. DISTRICT CT
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

06 MAY 12 AM 11:28

am

FILED

1

2. As long as loans were under a certain dollar lending limit of Jed Hiers, loan requests would not have to be presented to a loan committee of The Bank for review and approval. Based upon the instructions of Hiers, the defendant borrowed monies from The Bank in the names Samuel D. Hanna, Stacy Hanna, H & H Trucking, and Samuel D. Hanna, doing business as H & H Trucking. All of the loans were used for the same purpose, to support the trucking business of the defendant. Utilizing the above names, as directed by Hiers, the defendant obtained loans, loan renewals, and extensions of credit from The Bank. The defendant was also instructed that if he wanted to purchase any equipment, such as tractors or trailers for his business, he had to obtain the permission of Hiers to obtain additional funds for the purchases. Thereafter, another staff member would prepare the paperwork for the additional loans.

3. In support of the various loans, the defendant, at the request of The Bank's representatives submitted materially false financial statements to The Bank in 2001 through 2002. The financial statements listed account receivables from two companies that had previously filed for bankruptcy and were uncollectible, as well as materially mis-valued assets used for collateral. These financial statements were submitted for the purpose of influencing the financial institution to provide loans, loan renewals and extend credit to the defendant and his companies and to allow him and his company to appear on the books and records of The Bank to be current, when, in fact, the loans were past due in payments and the defendant and his company were not creditworthy at that time.

4. Hiers and representatives of The Bank contacted the Defendant repeatedly to come into the bank and to sign papers to have more money loaned to him

to allow the defendant and his company to appear on the books and records of The Bank to be current, when in fact, the loans were past due in payments and the defendant and his company were not creditworthy at the time.

5. The defendant was contacted by Hiers or his representative to come to The Bank to obtain more money to make outstanding loans currents or to obtain new loans. The defendant was advised that bank regulators or examiners were coming to The Bank and that the defendant's loans had to be straightened out. The defendant would not receive cash at these "closings," but the funds (now booked by The Bank as new loans) were utilized for payments of interest due on the loans (capitalizing loan interest) or paying back overdraft balances that had accumulated.

6. The defendant ultimately filed for bankruptcy, and, during a creditors meeting on December 23, 2003, the defendant told the trustee in bankruptcy that the collateral listed for the loans was not accurate in either description of value and would not fully collateralize the loans from The Bank. The defendant further told the trustee that when he couldn't make a loan payment, The Bank would loan him the money to make that payment on his loans.

7. The total amount of monies provided to the defendant and his business, by The Bank in the form of loans, loan renewals, or extensions of credit was $1,323,669.21.

8. C & L Bank, and its successor, the Bank, are federally uninsured.

Respectfully submitted,

GREGORY R. MILLER
United States Attorney

*/s/ Stephen M. Kunz*

STEPHEN M. KUNZ
Assistant United States Attorney
Florida Bar No. 0322415
111 North Adams St., 4th Floor
Tallahassee, FL 32301
(850) 942-8430